GLENN D. DASSOFF (SBN 96809)
gdassoff@orrick.com
KRISTOPHER R. WOOD (SBN 284727)
kristopher.wood@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Telephone: +1 949 567 6700
Facsimile: +1 949 567 6710

Attorneys for Plaintiff/Counter-Defendant,
STRETCH LAB FRANCHISE, LLC and Third-Party Defendant, ANTHONY GEISLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRETCH LAB FRANCHISE, LLC,<br><br>    Plaintiff,<br>v.<br>STRETCH LAB, LLC; SAUL C. JANSON; and TIMOTHY TROST,<br><br>    Defendants. | Case No. 2:18-cv-07816-GW (SSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Date: December 9, 2021<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu<br><br>**Remote hearing requested.** |
| STRETCH LAB, LLC, a California limited liability company; SAUL JANSON, an individual; and TIMOTHY TROST, an individual,<br><br>    Counter-Claimants,<br>v.<br>STRETCH LAB FRANCHISE, LLC, a Delaware limited liability company; and DOES 1-10, inclusive,<br><br>    Counter-Defendant. | |
| STRETCH LAB, LLC, a California limited liability company; SAUL JANSON, an individual; and TIMOTHY TROST, an individual,<br><br>    Third-Party Claimants,<br>v.<br>ANTHONY GEISLER, an individual; And DOES 1-10, inclusive,<br><br>    Third-Party Defendant | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................. 1

II. STATEMENT OF FACTS ................................................................................ 2

   A. The Parties Negotiate and Execute A Settlement Agreement, Including A Broad ███████████████████████ ............................... 2

   B. Saul Janson Violates The ███████████████████████ ................... 5

III. ARGUMENT ..................................................................................................... 6

   A. The Court Has Authority And Jurisdiction To Enforce The Settlement Agreement ............................................................................ 6

   B. ███████████████████████ Is Unambiguous, As Is Saul Janson's Breach ..................................................................................... 7

   C. SLF Is Entitled To Attorney's Fees and Damages ............................... 10

   D. Saul Janson And SLF Should Be Enjoined From Continuing To Make Disparaging Statements .............................................................. 11

IV. CONCLUSION ............................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Callie v. Near*,
 829 F.2d 888 (9th Cir. 1987) ................................................................................ 6

*In re City Equities Anaheim, Ltd.*,
 22 F.3d 954 (9th Cir. 1994) .................................................................................. 6

*Facebook, Inc. v. ConnectU, Inc.*,
 No. C 07-01389 JW, 2008 WL 8820476 (N.D. Cal. June 25, 2008) ............... 7, 8

*Harrop v. W. Airlines, Inc.*,
 550 F.2d 1143 (9th Cir. 1977) .............................................................................. 6

*Maynard v. City of San Jose*,
 37 F.3d 1396 (9th Cir. 1994) ................................................................................ 6

*TNT Mktg., Inc. v. Agresti*,
 796 F.2d 276 (9th Cir. 1986) ................................................................. 6, 10, 11

*Upwork Glob. Inc. v. Fan Lian*,
 No. 19-CV-07719-NC, 2021 WL 1080526 (N.D. Cal. Mar. 2, 2021) ......... 11, 12

Plaintiff and Counter-Defendant Stretch Lab Franchise, LLC ("SLF") respectfully moves for this Court to enforce the September 9, 2019 Confidential Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement")[1] entered between SLF and Anthony Geisler ("Geisler"), on the one hand, and Defendants/Counter-Claimants/Third-Party Plaintiffs Saul Janson ("Janson"), Timothy Trost ("Trost"), and Stretch Lab LLC ("SL") (collectively with SLF and Geisler, the "Parties"). Under Sections 8(c) and 11(a) of the Settlement Agreement, the Parties agreed that this Court would retain jurisdiction to resolve any disputes thereunder. SLF brings the instant Motion now to address a flagrant breach by Janson of the non-disparagement provisions in Section 8(a) of the Settlement Agreement.

## I.   INTRODUCTION

After extensive negotiations, on September 9, 2019, the Parties entered the Settlement Agreement, which included a broad, carefully drafted ███████ ██████████████ prohibiting Defendant Saul Janson and the other defendants from ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████ *Id.* This ████████████████████ was a necessary part of the Settlement Agreement that SLF insisted on because throughout the litigation, Janson had demonstrated extreme animosity towards SLF, its employees, its owner (Xponential Fitness, LLC, or "Xponential"), and Geisler; and had a long history of making disparaging statements about SLF and its directors, officers, and representatives.

Despite agreeing to be bound by the terms of the Settlement Agreement,

---

[1] The Settlement Agreement is included with the Declaration of Glenn Dassoff in support of this Motion as Exhibit A.

- 1 -

1  Janson explicitly and intentionally violated the ███████████████
2  ████████████████████████████████████████████████████████████████
3  ██████████ under the Settlement Agreement. Immediately after receiving █
4  ████████████████████ Janson violated the ████████████████████ by
5  sending SLF's President a malicious email falsely accusing him of ███████
6  ████████████████████████████████████████████████████████████ would
7  not only be extremely damaging to SLF's President's reputation and character, but
8  also to the SLF brand. As if that wasn't enough, Janson also directly attacked the
9  President of SLF's wife, ████████████████████████████████████████
10 ████████████████████████████████ *See* Declaration of Louis DeFrancisco
11 ("DeFrancisco Decl.") ¶ 4, Ex. A (October 12, 2021 Email from Saul Janson to Louis
12 DeFrancisco). Unless Janson is faced with monetary consequences for violating the
13 ███████████████████████████████ and is enjoined from continuing to make such
14 disparaging statements, there is no doubt Janson will simply continue this bad faith
15 conduct and escalate this just as he has in the past. SLF respectfully requests that the
16 Court enforce the Settlement Agreement, enjoin Janson from making disparaging
17 statements or representations under the Settlement Agreement, order Janson to pay
18 SLF at least $10,043 in attorney's fees in bringing this Motion to Enforce the
19 Settlement Agreement, and compel Janson to pay damages up to $50,000 for
20 violating the Settlement Agreement.

21 **II.   STATEMENT OF FACTS**
22     **A.   The Parties Negotiate and Execute A Settlement Agreement,**
23          **Including A Broad ███████████████████████████**

24 On September 7, 2018, SLF filed a lawsuit against Janson, Trost, and SL
25 ("Defendants") in this Court (the "Action"), asserting causes of action for breach of
26 contract regarding a November 15, 2017 Asset Purchase Agreement between the
27 Parties, breach of the implied covenant of good faith and fair dealing, breach of
28 consulting agreements between SLF and Janson and Trost, declaratory relief

1  regarding the Consulting Agreements, trademark infringement, and violations of
2  federal and California unfair competition law.  On October 25, 2018, Defendants
3  filed counterclaims against SLF and a third-party complaint against Geisler.  On
4  March 18, 2019, Defendants filed an additional counterclaim and third-party claim
5  against SLF and Geisler, respectively.
6       On July 12, 2019, during a Settlement Conference, the Parties participated in
7  mediation before the Court, with the Honorable George H. Wu acting as mediator.
8  The Parties were able to reach a settlement agreement and agreed to the terms on the
9  record. ███████████████████████████████
10 ████████████████████████████████████████
11 ████████████████████████████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ███████████████████████████  *See* Declaration of Glenn Dassoff ("Dassoff
15 Decl.") ¶ 3, Ex. B (Transcript of Settlement Conference Hearing at 6:3-14).
16      Per the Court's instruction that the Parties enter into a long-form Settlement
17 Agreement memorializing and elaborating upon the terms stated on the record during
18 the July 12, 2019 Settlement Conference, the Parties entered into the long-form
19 Settlement Agreement on September 9, 2019. ██████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ████████████████  Settlement Agreement § 1.
23      Further, under the Settlement Agreement, Defendants memorialized their
24 agreement to a broad ███████████████████, which states:
25 ████████████████████████████████████████
26 ████████████████████████████████████████
27 ████████████████████████████████████████
28 ████████████████████████████████████████

- 3 -



*Id.* § 8(a).

This Court may recall that the Settlement Agreement was the result of extensive negotiations between the Parties and their respective counsel, including specific negotiations about the breadth of the ▓▓▓▓▓▓▓▓▓▓. The Settlement Agreement's broad ▓▓▓▓▓▓▓▓▓▓ was a critical part of the Settlement Agreement because, throughout the period leading up to the Action and during the Action itself, Janson became increasingly agitated and prone to making disparaging statements to others. For example, Janson has sent numerous emails to SLF's officers and third parties, including emails addressed to "StretchLab Investors" calling Geisler and SLF's officers and directors ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ *See* Dassoff Decl. ¶¶ 4-8, Exs. C-G (Exhibits 15, 17, 28, 29, and 30 of Saul Janson's April 26, 2019 Deposition). Janson's outbursts were so severe that even his partner, Timothy Trost, sent an email to SLF's President Lou DeFrancisco stating that he would ▓▓▓▓▓▓▓▓▓▓ *See* Dassoff Decl. ¶ 4, Ex. C (Exhibit 15 of Saul Janson's April 26, 2019 Deposition).

Having witnessed Janson's increasingly erratic and antagonistic conduct over the course of more than a year, SLF and Geisler had little faith that Janson could be trusted to let bygones be bygones after settlement of the Action. Thus, the inclusion of this broad ▓▓▓▓▓▓▓▓▓▓ in the Settlement Agreement was a key element of the settlement for SLF and Geisler. The ▓▓▓▓▓▓▓▓▓▓

provided SLF and Geisler with peace of mind that they and their representatives would no longer have to worry about such inappropriate and harmful statements by Janson or the other defendants arising from this Action. Janson's recent conduct, however, proves those concerns were well-founded.

B. **Saul Janson Violates The** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Despite agreeing to be bound by the terms of the Settlement Agreement, Janson nonetheless willfully violated the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, on October 12, 2021, just 12 days after receiving the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and consistent with his prior bad faith conduct of making disparaging statements, Janson sent an email to SLF's President stating, in relevant part:

[REDACTED]

*See* DeFrancisco Decl. ¶ 4, Ex. A. Janson included the signature line "StretchLab Co-Founder" in his email, indicating he sent the email in his capacity as an officer of SL. *Id.* ¶ 5.

The timing of this email is further evidence of Janson's understanding that his conduct was a violation of the Settlement Agreement—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 3. In other words, as soon as Janson felt he was no longer at risk of disrupting further payments under the Settlement Agreement, he let fly with his malicious statements.

//

//

- 5 -

III. **ARGUMENT**

    A. **The Court Has Authority And Jurisdiction To Enforce The Settlement Agreement**

Under federal law, a district court has the power to summarily enforce a settlement agreement in an action pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986). Indeed, this Court retained jurisdiction over the Action even after the Parties settled for this express purpose. *See* Dassoff Decl. ¶ 3, Ex. B (Transcript of Settlement Conference Hearing at 4:3-6).

To be enforced, a settlement agreement must meet two requirements. First, the settlement agreement must be a complete agreement. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Callie*, 829 F.2d at 890. Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977). In enforcing the agreement, the court may order the specific performance of any party and may award damages for noncompliance with the agreement. *See TNT Mktg.*, 796 F.2d at 278.

Here, this Court has authority and jurisdiction to enforce the Settlement Agreement. There is no dispute that the Settlement Agreement is a complete agreement and that the Parties, through their respective counsel, agreed to and executed the terms of the Settlement Agreement on September 9, 2019. Indeed, ████████████████████████████████████████████ pursuant to the Settlement Agreement. The Parties also agreed under the Settlement Agreement that ████████████████████████████████████████████ ████████████████████████████████████████ Settlement Agreement § 8(c) ████████████████████████████████ ████████████████████████████████████████████

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████; *see*

5 *also Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW, 2008 WL 8820476, at

6 *3 (N.D. Cal. June 25, 2008) (holding that the court has "jurisdiction and authority

7 to enforce the Agreement without requiring additional pleadings" because "in

8 addition to its inherent authority and the authority conferred by California law, in

9 Paragraph 4 of the Agreement, the parties explicitly stipulated that the Court has

10 authority to exercise enforcement").

11       **B.**    ████████████████████████████ **Is Unambiguous, As Is Saul**

12             **Janson's Breach**

13       Under Section 8(a) of the Settlement Agreement, Janson, along with Trost

14 and SL, agreed that they █████████████████████████████

15 ██████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ██████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ██████████████████████████████████████████████████████████

20 ████████████████████████████████████

21 Settlement Agreement § 8(a) (emphasis added).

22       The same section then clearly defines ████████████████████

23 █████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████

25 █████████████████████████████████████████████████████

26 ██████ [2] *Id.* (emphasis added). █████████████████████

27 ─────────────────────────

28 [2] For the avoidance of doubt, this motion is not subject to Section 11(b)'s ███████████████ because there is no ███████████████ ██████████," given that Section 8(a)'s

- 7 -

1. ████████████████████████████████████████
2. ██████████████████████████. *Id.* ████████████████████
3. ████████████████████████████████████████
4. ██████████████████████ *Id.*
5.       Janson appears to believe that he is no longer bound by the Settlement
6. Agreement ████████████████████████—despite the fact that the ████
7. ████████████████ is clearly still in effect. *See* DeFrancisco Decl. ¶ 4, Ex. A.
8. While fully aware of the extensively negotiated terms of the Settlement Agreement,
9. Janson explicitly and intentionally violated the ████████████████ of the
10. Settlement Agreement by making a ████████ via email—in his capacity as
11. an officer of SL—accusing SLF's President—"████████████████████
12. ████████████████████████████████████████, among other
13. malicious and inappropriate accusations in clear breach of the ████████
14. ████ *See id.* ████████████████
15. ████████████████████████████████████████
16. ████████████████████████████████████████
17. ████████████████████████████████████████
18. ████████████████████████████████████████
19. ████████████ This ████████ about ████████████████
20. ████████████████████████████████ would certainly
21. ████████████████████████████████████████
22. ████████████████████████████████████████ *See*
23. Settlement Agreement § 8(a).
24.       These disparaging statements were particularly harmful to Mr. DeFrancisco, a
25. father, husband, and community and business leader, who takes his integrity and
26. reputation very seriously. *See* DeFrancisco Decl. ¶¶ 6-7. If such statements made
27. ████████████████
28. ████████████████████████████████████████

- 8 -

by Janson were made public or directed to any of the current or prospective SLF franchisees in the United States, they would have the potential to severely undermine SLF's business operations and continued success. *See id*. ¶ 8. Mr. DeFrancisco has put in significant effort over the past four years to build trust and goodwill between himself, as SLF's President, and the SLF franchisees, which has contributed to the success of SLF. *See id*. ¶ 9. And in this time, he has built up a solid reputation as a President that cares about the success of SLF's franchise partners. *Id*.

The franchise partners invest several hundred thousand dollars per location to open a StretchLab location, and the decision to become a franchise partner is a major life decision. *See id*. ¶ 10. Mr. DeFrancisco is responsible for onboarding SLF's franchise partners, and they place significant trust and faith in him through their due diligence process investigating SLF and Xponential. *Id*. Most of the SLF franchise partners have Mr. DeFrancisco's personal cell number, and Mr. DeFrancisco has created a relationship and environment where the franchise partners can feel free to call or text him anytime with any concerns. *See id*. If current franchise partners were to hear a rumor that he ▮▮▮▮▮▮▮▮▮▮ or any of the other disparaging statements in Janson's email or similar statements, that would erode the trust Mr. DeFrancisco has built with them over the past several years and would likely cause them to question whether they should continue to open more StretchLab locations. *See id*. ¶ 11. And if new franchise partners or franchise prospects were to hear of this rumor, that would impact their decisions to commit to spending several hundred thousand dollars on opening a StretchLab location. *See id*. ¶ 12. StretchLab has become the hottest, fastest growing brand in the Xponential Fitness portfolio. *See id*. ¶ 15. If the malicious and false accusations by Janson were to be made public, it would be extremely damaging to not only Mr. DeFrancisco's reputation and character, but also to the SLF brand and broader Xponential Fitness brand. *See id*. ¶¶ 13-15.

The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a critical part of the Settlement Agreement because, as demonstrated above, Janson has a long history of making

disparaging statements against SLF and its officers, directors, and representatives. And he clearly still harbors a great deal of animosity and ill-will toward SLF and its associates, despite the passage of time and the generous terms of the Settlement Agreement. Janson may not disregard the ████████████████████ that he expressly agreed to just because ████████████████████████████████ ██████ Unless Janson is faced with monetary consequences for violating the ███ ████████████████████ and is enjoined from continuing to make such disparaging statements, it is likely that he will simply continue this bad faith conduct and make disparaging statements in violation of the Settlement Agreement.

### C. SLF Is Entitled To Attorney's Fees and Damages

Plaintiff respectfully requests that the Court compel Janson to pay damages up to $50,000 for violating the Settlement Agreement and order Janson to pay SLF at least $10,043 in attorney's fees in bringing this Motion to Enforce the Settlement Agreement.

A district court has authority to award damages against the party in breach of a settlement agreement. *TNT Mktg.*, 796 F.2d at 278. Further, the Settlement Agreement specifically sets out that the Court shall have discretion to impose damages for violation of the ████████████████████ in an amount up to $50,000. *See* Settlement Agreement § 8(c). Damages imposed on Janson for breach of the ████████████████████ are appropriate here because, unless there is a direct financial repercussion against Janson arising out of this conduct, there will be nothing to stop Janson from continuing to violate the ███ ████████████████████

Separately, the Settlement Agreement contains an attorney's fees provision, which allows the prevailing party to seek attorney's fees in any dispute arising out the Settlement Agreement ████████████████████████████████ ████████ Settlement Agreement § 11(d). Section 11(d) specifically provides:

- 10 -

1
2
3
4
5  *Id.*
6     If the Court finds that Janson violated the ███████████████████ of
7  the Settlement Agreement, it should also order Janson to pay reasonable attorney's
8  fees to SLF incurred to enforce this Settlement Agreement.  To date, SLF has
9  incurred at least $10,043 in reasonable attorney's fees to bring this motion.  Dassoff
10 Decl. ¶¶ 9-10.  SLF anticipates that it will incur additional attorney's fees on this
11 issue, such as in preparing a reply to Janson's opposition to this motion and
12 attending the hearing.  To the extent additional attorney's fees are incurred on this
13 issue, SLF will provide updated records to support this request.

### D. Saul Janson And SLF Should Be Enjoined From Continuing To Make Disparaging Statements

16     The Court also has authority to order the specific performance of any party.
17 *TNT Mktg.*, 796 F.2d at 278.  Further, Section 11(e) of the Settlement Agreement
18 provides that ███████████████████████████████████████
19 ████████████████████  Settlement Agreement § 11(e).
20     Janson should be enjoined from continuing to make disparaging statements
21 because he is legally barred from doing so under the Settlement Agreement.
22 Further, Mr. DeFrancisco and SLF will face irreparable harm to their reputation and
23 goodwill unless Janson is enjoined from continuing to act in bad faith and making
24 disparaging statements against them.  *See Upwork Glob. Inc. v. Fan Lian*, No. 19-
25 CV-07719-NC, 2021 WL 1080526, at *6 (N.D. Cal. Mar. 2, 2021).  Remedies
26 available at law are inadequate to compensate for that injury; the hardship that
27 Janson might experience if he is enjoined from making disparaging statements in
28 accordance with the ███████████████ is minimal in comparison to Mr.

DeFrancisco and SLF's reputational harm; and it is in the public's interest for the Court to give effect to a binding Settlement Agreement and enjoin unlawful conduct. *See id.*

## IV. CONCLUSION

For the foregoing reasons, SLF respectfully requests that the Court enforce the Settlement Agreement, enjoin Janson from making disparaging statements or representations under Section 8 of the Settlement Agreement, order Janson to pay SLF at least $10,043 in attorney's fees in bringing this Motion to Enforce the Settlement Agreement, and compel Janson to pay damages up to $50,000 for violating the Settlement Agreement.

Dated: November 5, 2021      ORRICK, HERRINGTON & SUTCLIFFE LLP

By:    */s/ Glenn D. Dassoff*
         GLENN D. DASSOFF
         KRISTOPHER R. WOOD

Attorneys for Plaintiff/Counter-Defendant, STRETCH LAB FRANCHISE, LLC and Third-Party Defendant, ANTHONY GEISLER